UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------------------X
MARY KASTEN,                                                    Civ. No.: 2:17-cv-3262

                        Plaintiff,

                                                   **COMPLAINT**

      -against-

SHAAN ENTERPRISES, INC. T/A DOMINO'S PIZZA, and          Plaintiff Demands A
JOSE LEBRON, individually,                                                         Trial By Jury

                        Defendants.
-------------------------------------------------------------------------------X

      Plaintiff, MARY KASTEN (hereinafter referred to as "Plaintiff" and/or "KASTEN"), by and through her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant SHAAN ENTERPRISES, INC. T/A DOMINO'S PIZZA (hereinafter referred to as "SHAAN") and Defendant JOSE LEBRON (hereinafter referred to as "LEBRON") (hereinafter collectively referred to as "Defendants"), upon information and belief as follows:

## NATURE OF CASE

1. Plaintiff MARY KASTEN complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD"), based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, sex/gender discrimination, together with sexual harassment, hostile work environment, and unlawful termination by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4. On or about June 16, 2016, Plaintiff filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5. On or about February 8, 2017 Plaintiff received a Right to Sue Letter from the EEOC.

6. Plaintiff has satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the District of New Jersey.

## PARTIES

8. Plaintiff is an individual woman who is a resident of the State of New Jersey in the County of Passaic.

9. At all times material, Defendant SHAAN ENTERPRISES, INC. T/A DOMINO'S PIZZA, is a domestic profit corporation duly existing by the virtue and laws of the State of New Jersey that does business in the State of New Jersey.

10. At all times material, Defendant SHAAN owns and operates several "Domino's Pizza" restaurants in New Jersey.

11. At all times material, Defendant SHAAN owns and operates a Domino's Pizza Restaurant located at 648 Godwin Avenue in Midland Park, New Jersey 07432 (hereinafter referred to as "The

Store").

12. At all times material, Defendant SHAAN employed Plaintiff in the District of New Jersey.

13. At all times material, Defendant JOSE LEBRON is an individual man who is a resident of the State of New Jersey in the County of Passaic.

14. At all times material, Defendant JOSE LEBRON was and is the Assistant Manager of Defendant SHAAN's Domino's Pizza restaurant located at 98 East Main Street in Ramsey, New Jersey 07446.

15. At all times material, Defendant LEBRON had supervisory authority over Plaintiff with regard to her employment.

## STATEMENT OF MATERIAL FACTS

16. In or around December 2015, Defendant SHAAN hired Plaintiff to work in The Store.

17. At all times material, MOHAMMAD a/k/a "MIKE" KAHN (hereinafter referred to as "KAHN") was and is the controlling shareholder of Defendant SHAAN.

18. At all times material, KAHN was and is the Owner and Operator of The Store.

19. At all times material, KAHN had supervisory authority over Plaintiff with regard to her employment.

20. At all times material, MOSES SANCHEZ (hereinafter referred to as "SANCHEZ") was and is the General Manager of The Store.

21. At all times material, SANCHEZ had supervisory authority over Plaintiff with regard to her employment.

22. At all times material, KARLIN (last name unknown) (hereinafter referred to as "KARLIN") was and is the Assistant Manager of The Store.

23. At all times material, KARLIN had supervisory authority over Plaintiff with regard to her

employment.

24. At the time of Plaintiff's constructive termination, Plaintiff's rate of pay was approximately eight dollars and thirty-eight cents ($8.38) per hour.

25. In or around December 2015, Plaintiff began her employment with Defendant SHAAN at The Store.

26. Plaintiff's primary duties and responsibilities included but were not limited to, cleaning dishes, preparing food, and delivering supplies.

27. Plaintiff worked roughly three (3) or (4) days per week. Occasionally, Defendant SHAAN required Plaintiff to close the store at the end of the night.

28. In or around April 2016, and unbeknownst to Plaintiff, Defendant SHAAN arranged for Defendant LEBRON, Defendant SHAAN's' Assistant Manager from a nearby store, to occasionally work at The Store on weekends.

29. In addition, Defendant SHAAN arranged for Plaintiff to drive Defendant LEBRON home after work, since Plaintiff and Defendant LEBRON lived close to each other.

30. On or about May 1, 2016, Plaintiff was working in The Store.

31. On or about May 1, 2016, DEFENDANT LEBRON was working in The Store.

32. On or about May 1, 2016, DEFENDANT LEBRON began to sexually harass Plaintiff. As will be discussed further below, DEFENDANT LEBRON exhibited a pattern and practice of sexually harassing Defendant SHAAN's' female employees.

33. In fact, as will be discussed further below, Defendant SHAAN had knowledge of prior incidents of sexual harassment with DEFENDANT LEBRON and other female employees.

34. On or about May 1, 2016, DEFENDANT LEBRON approached Plaintiff while she was washing dishes and stated that he liked Plaintiff and wanted, "to fuck you in the walk-in."

35. Plaintiff was stunned by the lewd, unprofessional, and inappropriate nature of her supervisor's comment. Plaintiff pretended to not have heard what DEFENDANT LEBRON said, and stammered, "Excuse me?! What did you just say?!"

36. DEFENDANT LEBRON stepped directly behind Plaintiff so that his penis brushed against her buttocks and repeated his previous statement, "I want to fuck you in the walk-in."

37. DEFENDANT LEBRON was referencing the walk-in refrigerator and/or freezer in The Store.

38. Plaintiff adamantly refused DEFENDANT LEBRON's egregious sexual advances and asked him to please get away from her.

39. Later that evening, on or about May 1, 2016, Defendant SHAAN instructed Plaintiff to drive DEFENDANT LEBRON home.

40. As soon as DEFENDANT LEBRON entered Plaintiff's vehicle, DEFENDANT LEBRON informed Plaintiff, "I'm so happy we're finally alone." DEFENDANT LEBRON continued to make inappropriate and egregious sexual advances towards Plaintiff.

41. Specifically, DEFENDANT LEBRON asked Plaintiff if she would like to "fuck" him, indicated that he and Plaintiff "could go anywhere" to have sex, and that DEFENDANT LEBRON would even "pay for a hotel room" to have sex with Plaintiff.

42. Plaintiff was appalled by DEFENDANT LEBRON's comments. Plaintiff vehemently stated that she was happily married and demanded that DEFENDANT LEBRON stop his lewd and inappropriate behavior immediately.

43. However, DEFENDANT LEBRON continued to sexually harass Plaintiff and began to stroke his penis with his hands over his pants. While masturbating, DEFENDANT LEBRON asked Plaintiff if she would like him to remove his penis from his pants. Plaintiff began to fear for her safety and once again instructed DEFENDANT LEBRON to stop immediately. Plaintiff indicated that not

only was DEFENDANT LEBRON's behavior unwelcome, but it was also depraved and obscene.

44. Much to Plaintiff's relief, shortly thereafter Plaintiff arrived at LEBRON's home to drop him off. LEBRON exited Plaintiff's vehicle and stated, "Hope to see you soon Miss Mary."

45. As a result of LEBRON's vulgar and perverted behavior, Plaintiff felt violated and humiliated.

46. Shortly thereafter, on or about May 4, 2016, Plaintiff, still distraught from her contemptible encounter with LEBRON, informed Defendant SHAAN's management team at The Store, KARLIN and SANCHEZ. Plaintiff informed KARLIN and SANCHEZ of LEBRON's unwelcome and crude sexual advances, and complained to KARLIN and SANCHEZ that she was deeply disturbed by her supervisor's egregious sexual advances.

47. In response to Plaintiff's complaint, SANCHEZ stated, "O my god, does your husband know?"

48. In the presence of SANCHEZ, KARLIN informed Plaintiff that LEBRON had previously made sexual advances towards KARLIN's friend - a previous employee of Defendant SHAAN - and quit immediately after being sexually harassed by LEBRON.

49. After learning that Plaintiff had been subjected to LEBRON's pattern and practice of sexual harassment, SANCHEZ and KARLIN, Plaintiff's supervisors, merely recommended that Plaintiff attempt to record LEBRON the next time he sexually harassed her.

50. At no point did SANCHEZ or KARLIN attempt to take any remedial action.

51. In fact, SANCHEZ and KARLIN informed Plaintiff that Defendant SHAAN had scheduled Plaintiff to drive LEBRON home again, on or about May 15, 2016.

52. Defendant SHAAN subjected Plaintiff to a hostile work environment on the basis of her sex/gender and the sexual harassment resulting therefrom.

53. Defendant SHAAN retaliated against Plaintiff by failing to take any action to remedy Plaintiff's complaints of sexual harassment, but rather forced Plaintiff to drive LEBRON home again the

following week.

54. Defendant SHAAN thrust Plaintiff back into an environment in which her safety and well-being were endangered.

55. Defendant SHAAN knowingly permitted and enabled LEBRON to continue to sexually harass Plaintiff.

56. The following week, on or about May 15, 2016, Defendant SHAAN forced Plaintiff to drive LEBRON home after work.

57. Upon entering Plaintiff's vehicle, LEBRON continued to behave in a manner that is so appalling that it shocks the conscience.

58. LEBRON repeatedly asked Plaintiff to pull over so they could have sex, and LEBRON even pulled out his penis and began to masturbate in Plaintiff's car.

59. LEBRON's comments and conduct during the May 15, 2016 car ride are listed below.

60. LEBRON informed Plaintiff that he frequently smokes marijuana, before, during, and after working for Defendant SHAAN. LEBRON proceeded to tell Plaintiff, "I still got more pot. Why, you wanna smoke?" Plaintiff refused.

61. LEBRON stated, "I am most certainly happy, but it ain't cause of the pot…it's because I'm with Miss Mary." Plaintiff stated, "Thank you, that's nice of you, but I'm not doing nothing to you." LEBRON responded, "I can only hope."

62. LEBRON proceeded to ask Plaintiff how many times she had thought of LEBRON since the last time they had seen each other. LEBRON inquired, "So, on those few occasions you thought about me, did you get a tickle in the nether regions?"

63. LEBRON then discussed issues with his compensation. LEBRON stated, "What kills me more is the loss of income. May have to put my motherfuckin' man thong on, go out there and shake it. I

do private parties if you're interested."

64. LEBRON later stated how much he enjoyed working with Plaintiff, "It's motivating when I spend half my work day with raging boners." Plaintiff was stunned and said, "Excuse me?!" LEBRON said, "You don't know what you do to me, Miss Mary," and "You kinda light my fire, like I have a very sincere attraction to you."

65. Other offensive comments and conduct by LEBRON include, but are not limited to:

- "You got a fuckin' rockin' bod."
- "You got a rockin' bod baby, just thinkin' about it right now...and good thing I'm not wearing tighty whities, I'm wearing boxers."
- "God knows I wanna flash the fuck out of you. Who knows when my next opportunity would be. I mean you did leave over an hour early, could take a few detours."
- LEBRON grabbed his crotch and indicated to Plaintiff that he had an erection.
- "Pulled this fuckin' monster out."
- LEBRON removed his penis from his pants and started to masturbate.
- "Should I put him away then?"
- LEBRON continued to stroke his penis as his belt audibly swung back and forth.
- "That's so exciting that I got naked in here. I should just get out and walk to the house like that right? How about you look at it Miss Mary?"
- "Talking to you with my cock out hahah sorry."
- "Could I bother you for a smooch on the kiss? Smooch on the cheek?"
- "God you are so fuckin' perfect. You are perfect, I'm so happy though. Oh, I'm so gonna jerk the fuck off right now."
- "TITTIES GON' BE ITCHIN."

66. Throughout the course of the extremely uncomfortable and grotesque car ride, Plaintiff continuously declined LEBRON's advances.

67. Defendant SHAAN subjected Plaintiff to a hostile work environment on the basis of her sex/gender and the sexual harassment resulting therefrom.

68. Defendant SHAAN retaliated against Plaintiff by failing to take any action to remedy Plaintiff's complaints of sexual harassment, but rather forced Plaintiff to drive LEBRON home again.

69. Defendant SHAAN knowingly subjected Plaintiff to further sexual harassment, sexual assault, and endangered Plaintiff's safety.

70. Defendant SHAAN knowingly permitted and enabled LEBRON to continue to sexually harass Plaintiff.

71. Defendant SHAAN constructively discharged Plaintiff on or about May 16, 2016.

72. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

73. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

74. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

75. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

76. The above are just some of the examples of the pattern and practice of unlawful, discriminatory,

and retaliatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER
TITLE VII
(AGAINST DEFENDANT SHAAN)**

77. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer:
"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . .."

79. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of her sex/gender, together with causing a hostile work environment based on the same.

80. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

81. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION
FOR DISCRIMINATION UNDER
TITLE VII
(AGAINST DEFENDANT SHAAN)**

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall

be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

84. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq., by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

85. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION
UNDER NEW JERSEY STATE LAW
DISCRIMINATION
(AGAINST ALL DEFENDANTS)**

86. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. New Jersey's Law Against Discrimination ("NJLAD") Section 10:5-12(a) sets forth in pertinent part as follows:

"It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) For any employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from

employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

88. Defendants engaged in unlawful discriminatory practices prohibited by NJLAD Section 10:5 et seq., by discriminating against the Plaintiff because of her sex/gender, together with causing a hostile work environment based on the same.

89. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the NJLAD Section 10.

90. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## RETALIATION
## (AGAINST ALL DEFENDANTS)

91. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92. New Jersey Law Against Discrimination §10:5-12(d) provides that it shall be an unlawful discriminatory practice:

"For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted by this act."

93. Defendants engaged in unlawful discriminatory and retaliatory practices prohibited by NJLAD Section 10:5 et seq., by retaliating and otherwise discriminating against Plaintiff, including, but not limited to, constructively discharging Plaintiff's employment, because of Plaintiff's opposition to Defendants' unlawful employment practices.

94. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION
UNDER NEW JERSEY STATE LAW
AIDING AND ABETTING
(AGAINST ALL DEFENDANTS)**

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. New Jersey Law Against Discrimination §10:5-12(e) provides that it shall be an unlawful discriminatory practice:

    "For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

97. Defendants engaged in an unlawful discriminatory practice prohibited by NJLAD Section 10:5 et seq., by aiding, abetting, inciting, compelling and/or coercing the discriminatory, unlawful, and retaliatory conduct as stated herein.

98. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants in an amount to be determined at trial for all emotional distress, lost wages, back and front pay, punitive damages, liquidated and statutory damages, attorneys fees, costs and interest and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, New York
        May 9 , 2017

                                              **DEREK SMITH LAW GROUP, PLLC**
                                              *Attorneys for Plaintiff*

                                              Zack Holzberg, Esq.
                                              30 Broad Street, 35th Floor
                                              New York, NY 10004
                                              (212) 587-0760